UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

ELÍAS PABLO-MATÍAS,

Petitioner,

v.

CHRISTOPHER LAROSE; PATRICK DIVVER; TODD LYONS; MARKWAYNE MULLIN; ACTING ATTORNEY GENERAL OF THE UNITED STATES; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,

Respondents.

Case No.: 3:26-cv-02930-LEK-MMP

**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Before this Court is Petitioner Elías Pablo-Matías's ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"), filed on May 8, 2026. [Dkt. no. 1.] Respondents Christopher LaRose, warden of Otay Mesa Detention Center; Patrick Divver, San Diego Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); Todd Lyons, Acting Director of Immigration and Customs Enforcement; Markwayne Mullin, Secretary of the Department of Homeland Security; Acting Attorney General of the United States; U.S. Department of Homeland Security ("DHS"); and U.S. Immigration and Customs Enforcement ("ICE" and collectively "Respondents") filed a

Return to Petition for a Writ of Habeas Corpus ("Return") on May 15, 2026.[1] [Dkt. no. 4.] While this Court acknowledges that the time to file a traverse has not yet passed, upon review of the Petition and the Return, this Court finds that additional argument is not necessary.

The Petition is granted in part and denied in part for the reasons set forth below.

## BACKGROUND

Petitioner is a citizen of Guatemala. [Petition at ¶ 13.] At the age of seventeen, he entered the United States on January 14, 2022, and was immediately apprehended and transferred to a resettlement agency for unaccompanied minors. See id. at ¶ 2. Petitioner was granted parole and released on his own recognizance when he turned eighteen. See id. Removal proceedings were commenced on June 1, 2022, but they were terminated on August 26, 2022. See id.

On June 27, 2022, Petitioner initiated an asylum case. See id. Petitioner had an asylum interview on October 13, 2023, and he was granted work authorization on October 25, 2023. See id. Thus, he was working while waiting for a decision on his asylum application. See id.

On January 14, 2026, Petitioner was traveling in a truck as part of his employment with North County Scaffold. See id. at ¶ 3. At a weigh station on Interstate 5, Petitioner was asked for his identification, and then he was instructed to exit the vehicle. Petitioner was arrested on the ground that he did not have a current case with the Executive Office for Immigration Review ("EOIR"). He was transported to a processing center and later incarcerated at the Otay Mesa Detention Center. Petitioner did not receive a pre-detention hearing, and there was no individualized determination that

---

[1] The individual Respondents are sued in their official capacities. See Petition at ¶ 21.

3:26-cv-02930-LEK-MMP

Petitioner was either a flight risk or a danger to the community. See id. Petitioner was still being detained at the Otay Mesa Detention Center when he filed the Petition. See id. at ¶ 13.

Petitioner asks the Court to, *inter alia*: 1) assume jurisdiction over this matter; 2) issue a declaratory judgment that Petitioner's detention without a prior individualized determination is unlawful; 3) issue a writ of habeas corpus ordering Respondents to release Petitioner from custody and to return all property that was seized from him upon his arrest; 4) issue an order prohibiting Respondents from re-detaining Petitioner without an order from this Court; 5) award Petitioner attorney's fees and costs under the Equal Access to Justice Act; and 6) order any other appropriate relief. See id. at pgs. 23-24.

### STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to Title 28 United States Code Section 2241. See 28 U.S.C. § 2241(a); Zavala v. Ives, 785 F.3d 367, 370 n.3 (9th Cir. 2015). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. See 8 U.S.C. § 1252(a)(1), (5); see also Alvarez-Barajas v. Gonzales, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process – for example, a claim of indefinite detention – federal habeas corpus jurisdiction remains in the district court. Alvarez v.

3:26-cv-02930-LEK-MMP

*Sessions*, 338 F. Supp. 3d 1042, 1047-48 (N.D. Cal. 2018) (citations omitted); *see also Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006).[2]

## DISCUSSION

Respondents state "that Petitioner is subject to mandatory detention under [8 U.S.C.] § 1225(b)(2)." [Return at 2.] Respondents, however, "acknowledge[] that this Court, and Courts in this District, have repeatedly reached the opposite conclusion under the same and/or similar facts." [Id. (collecting cases).] Respondents, therefore, "do[] not oppose the petition and defer[] to the Court on the appropriate relief." [Id. at 3.]

The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). This protection applies to noncitizens as it does to United States citizens. *See Wong Wing v. United States*, 163 U.S. 228, 238 (1896) ("[E]ven aliens shall not . . . be deprived of life, liberty or property without due process of law."). "Courts have previously found that individuals released from immigration custody on bond have a protectable liberty interest in remaining out of custody on bond." *Valencia Zapata v. Kaiser*, Case No. 25-cv-07492-RFL, 2025 WL 2578207, at *3 (N.D. Cal. Sept. 5, 2025) (collecting cases). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if they fail to live up to the . . . conditions of release.'" *Pinchi v. Noem*,

---

[2] *Nadarajah* was abrogated on other grounds by *Jennings v. Rodriguez*, 583 U.S. 281 (2018), as recognized by *Esquivel-Ipina v. LaRose*, 812 F. Supp. 3d 1073, 1077 (S.D. Cal. 2025).

3:26-cv-02930-LEK-MMP

792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (some alterations in <u>Pinchi</u>) (brackets omitted) (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 482, 92 S. Ct. 2593 (1972)).

In <u>Noori v. LaRose</u>, 807 F. Supp. 3d 1146 (S.D. Cal. 2025), this district court ruled that the respondents violated the petitioner's Fifth Amendment due process rights when the respondents revoked the petitioner's parole by sending a mass, generic notification one morning and arresting the petitioner later that day at his immigration hearing. <u>Id.</u> at 1155, 1166. This district court concluded that the petitioner had "a protectable expectation of his due process rights in his removal proceedings and the fair procedures this country guarantees. . . . Particularly, he was entitled to both notification of revocation and the reasoning for revocation, if not also an opportunity to be heard and contest the determination." <u>Id.</u> at 1165.

In the instant action, Petitioner received even less due process than the petitioner in <u>Noori</u>. Petitioner received no notification or individualized reason as to why his bond was being revoked before he was summarily detained on January 14, 2026. <u>See</u> Petition at ¶¶ 3, 59. Nor have Respondents explained, even after they filed the Return, what circumstances have changed to warrant Petitioner's re-detention. Providing Petitioner a bond hearing now would not remedy the Fifth Amendment violation he has already experienced. Only release from detention can accomplish that now.[3]

Petitioner's request for an award of attorney's fees and costs, <u>see</u> Petition at pg. 24, is denied without prejudice to the filing of an application requesting reasonable attorney's fees and costs that is filed within thirty days of the entry of judgment.

---

[3] The Court need not address Petitioner's claim arising under the Administrative Procedures Act, Title 5 United States Code Section 706(2)(A), [Petition at pgs. 19-21,] because the Petition can be resolved on due process grounds.

5

## CONCLUSION

For the foregoing reasons, Petitioner Elías Pablo-Matías's Petition for Writ of Habeas Corpus, filed May 8, 2026, is GRANTED IN PART AND DENIED IN PART.

The Petition is GRANTED insofar as Respondents are ORDERED to immediately release Petitioner from custody under the same conditions which existed immediately prior to Petitioner's detention on January 14, 2026, and to return Petitioner's belongings immediately upon his release. Further, Respondents are ENJOINED AND RESTRAINED from re-detaining Petitioner unless Respondents demonstrate, by clear and convincing evidence at a pre-deprivation hearing before a neutral decisionmaker, that Petitioner presents a flight risk or danger to the community such that his physical custody is legally justified.

The Petition is DENIED WITHOUT PREJUDICE as to Petitioner's request for attorney's fees and costs.

The parties are ORDERED to file a joint status report by **May 26, 2026**, confirming that Petitioner has been released and that his belongings have been returned.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, May 19, 2026.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**ELIAS PABLO-MATIAS VS. CHRISTOPHER LAROSE, ET AL; CV 26-02930 LEK-MMP; ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

6